IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KAREN CAMERON,                        )
                                      )
       Plaintiff            )
                                      )
       v.                   )        No. 3:06-cv-09
                                      )
GRAINGER COUNTY, TENNESSEE,           )
*et al.*,
                                      )
       Defendants
                                      )

## **MEMORANDUM OPINION**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff Karen Cameron contends that she was fired from her position in the Grainger County Circuit Court Clerk's Office in violation of her First Amendment right to political and/or intimate association. She also claims in her complaint that she was denied her right of access to the courts, but that claim has now been dropped.

Currently pending is the defendants' motion for summary judgment [Court File #17]. For the reasons that follow, the motion will be denied.

I.

*Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiff.

Plaintiff was hired by the Circuit Court Clerk's Office in Grainger County in August 1996, and performed various duties within the Clerk's Office until her termination January 13, 2005. According to the Circuit Court Clerk, defendant Rhonda Reagan, plaintiff always performed her job well.

On July 15, 2004, plaintiff's then boyfriend, Michael Cameron, a Tennessee Highway Patrolman, brutally beat the plaintiff after falsely accusing her of dating someone else. In the presence of defendant Reagan, plaintiff gave a statement to Dan Bowman, Assistant Special Agent in charge of Criminal Investigations with the Tennessee Highway Patrol, on July 16, 2004. The statement recounted the events and indicated that Mr. Cameron threatened her and other court personnel if a warrant was taken out against him. The threat occurred during the assault and was made only to plaintiff. Ms. Reagan was present during plaintiff's interview with Agent Bowman. According to plaintiff, Ms. Reagan did not express any concern with Mr. Cameron's alleged "threat" and said nothing. The next day, on

July 17, 2004, a warrant was issued and served on Mr. Cameron for aggravated assault. The assault warrant was issued in the General Sessions Court for Grainger County, Tennessee, and accordingly, all proceedings were to occur in Grainger County.

Despite the fact that all court proceedings concerning Mr. Cameron were to occur in Grainger County and paperwork filed in offices overseen by defendant Reagan, plaintiff was not asked to take a leave of absence. In fact, nothing at all was said to plaintiff by defendant Reagan about Mr. Cameron's prosecution interfering with her duties or causing disruptions in or around the Circuit Court Clerk's Office.

Plaintiff married Michael Cameron August 16, 2004. Sometime after that, defendant Reagan asked plaintiff to take a "leave of absence." Plaintiff said in her deposition that Reagan told her that the leave was necessary in part due to the criminal case, but no matter when the criminal case was resolved, she did not want plaintiff to return to work until after the August 2006 election. In her affidavit, plaintiff indicates that both her husband, Michael Cameron, and his father, Earl Cameron, were political opponents of defendant Reagan. In fact, the Camerons had supported and actively campaigned for all of Ms. Reagan's opponents in elections for the Office of Circuit Court Clerk since 1994.

Plaintiff told Reagan that she did not see the need for any leave of absence and, in fact, never worked on or touched any part of her husband's criminal court file. In addition, despite his July 15, 2004 "threat" to Mrs. Cameron, her husband never called nor appeared at the courthouse except for his criminal proceedings. Although plaintiff remembers a deputy with the Grainger County Sheriff's Department being present a week or two after the assault, in her deposition she stated that he merely walked throughout the courthouse and no disruptions occurred.

Defendant Reagan admitted in her deposition that Mr. Cameron did not threaten her or anyone else. Reagan also admitted that the Camerons were political opponents and/or supported her opponents in elections.

Plaintiff was terminated on January 13, 2005. This is despite the fact that Reagan admitted that Cameron stayed away from her husband's case and worked in the Circuit Court Clerk's Office for six months prior to her termination, one week prior to Cameron's January 20, 2005 indictment. Reagan admitted drafting plaintiff's two-week notice letter, but plaintiff denies ever receiving the letter. After plaintiff's termination and the institution of this lawsuit, Reagan also admitted interfering with plaintiff's ability to get a job at Peninsula Hospital.

4

## II.

### *Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion,

5

against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

***Analysis***

Initially, the defendants contend that Grainger County cannot be liable because defendant Reagan is not a "policymaker" whose conduct could bind the County. The court disagrees. A policymaker is one who has "final authority to establish municipal policy with respect to the action ordered." *See Pembaur v. City of Cincinnati*, 475 F.2d 481 (1986). In this case, it is uncontradicted that defendant Reagan was the person responsible for employment and/or termination of employees in the Circuit Court/General Sessions Court Clerk's Office. Neither the County Mayor nor any other county official had any input in those decisions or reviewed Reagan's decisions in any manner. Accordingly, for the purpose of hiring and firing employees in the Clerk's Office, defendant Reagan was a policymaker for Grainger County.

Next, defendants argue that plaintiff does not come forward with sufficient evidence to submit to a jury that the defendants violated her right to

6

political and/or intimate association, and that even if she did, defendant Reagan would be entitled to qualified immunity with respect to the decision to terminate her.

In order to establish retaliation for engaging in constitutionally protected activity, a plaintiff must prove the following elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeas X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). This analysis focuses on whether the adverse employment action was motivated in substantial part by the plaintiff's constitutionally protected activity. *See Mattox v. City of Forest Park*, 183 F.3d 515, 520-21 (6th Cir. 1999). If the plaintiff meets her burden, then the burden shifts to the defendants to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct. *See Kreucer v. Brown*, 128 F.3d 359, 363 (6th Cir. 1997).

The right of political association is well established under the First Amendment. "Political belief and association constitute the core of those activities protected by the First Amendment." *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69 (1990). In addition, in *Roberts v. United States Jaycees*, 468 U.S. 609, 617-

18 (1984), the Court stated that one type of constitutionally protected freedom of association is the right "to enter into and maintain certain intimate human relationships [which] must be secured against undue intrusion by the state because of the role of such relationships and safeguarding the individual freedom that is central to our constitutional scheme." The Court reasoned that the formation and preservation of certain types of "highly personal relationships" is necessary to secure individual liberty and suggested that marriage is such a relationship that must be protected against unwarranted state interference. *See id.* at 618-19.

In this case, considering the evidence in the light most favorable to the plaintiff, a reasonable jury could conclude that a substantial factor in Ms. Reagan's decision to terminate the plaintiff's employment was plaintiff's marriage to Mr. Cameron, a member of a family which was comprised of her political opponents. If true, it could state a constitutional First Amendment claim upon which relief could be granted. *See Adkins v. Board of Education*, 982 F.2d 952, 955-56 (6th Cir. 1993).

Finally, defendant Reagan contends that she is entitled to qualified immunity, urging that she could not have reasonably known that her conduct might violate any of plaintiff's constitutional rights. However, the United States Court of Appeals for the Sixth Circuit in *Sowards v. Loudon County, Tennessee*, 203 F.3d 426 (6th Cir. 2000), recognized that a former jailer stated a claim under § 1983 for

8

interference with her First Amendment rights of political and intimate association when she alleged that she was terminated from her employment because of her marital relationship with one of the Sheriff's opponents. Accordingly, the law which plaintiff claims defendant violated in this case was clearly established at the time of defendant Reagan's actions.

IV.

*Conclusion*

In light of the foregoing, the defendants' motion for summary judgment [Court File #17] will be denied.

Order accordingly.

<u>  *s/ James H. Jarvis*  </u>
UNITED STATES DISTRICT JUDGE

9